NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

24-P-1327                                          Appeals Court

MICHAEL TOMASO, petitioner.


No. 24-P-1327.

Worcester.     January 5, 2026. – July 2, 2026.

Present:  Walsh, Toone, & Tan, JJ.


Sex Offender.  Practice, Civil, Sex offender, Civil commitment,
     Report.  Evidence, Sex offender, Expert opinion, Police
     report.  Witness, Expert.



     Petition filed in the Superior Court Department on February
5, 2019.

     The case was tried before Michael J. Pineault, J.


     Frederic G. Bartmon for the petitioner.
     Brian P. Mansfield for the Commonwealth.


     TOONE, J.  Because sexually dangerous person proceedings

seek to determine a person's propensity to commit sexual

offenses in the future, they are governed by a unique and

complex set of evidentiary rules, some prescribed by statute and

others based in common law.  See McHoul, petitioner, 445 Mass.

143, 147-148 (2005), cert. denied, 547 U.S. 1114 (2006);

Commonwealth v. Mackie, 100 Mass. App. Ct. 78, 84-85 (2021).  In this case, the petitioner, Michael Tomaso, was civilly committed as a sexually dangerous person in 2009, and in 2019 he filed a petition pursuant to G. L. c. 123A, § 9, for release from his confinement.  Following a trial in the Superior Court, a jury found that he remained sexually dangerous.  At trial, each of the three psychologists called by the Commonwealth opined that, even though the petitioner was last convicted of a sexual offense thirty-five years ago, he was likely to sexually reoffend if released because he suffered from sexual sadism disorder, among other conditions.  In arriving at their diagnoses of sexual sadism, all three experts relied predominantly, if not exclusively, on the alleged facts underlying dismissed sexual offense charges against the petitioner in 2002 and 2003.  Because we cannot determine from the record whether those alleged facts were "independently admissible" under Department of Youth Servs. v. A Juvenile, 398 Mass. 516, 531 (1986), and Commonwealth v. Markvart, 437 Mass. 331, 337 (2002), due to the Commonwealth's failure to make such a showing and the judge's failure to hold a hearing on that issue as the petitioner had requested, it was error to admit the experts' sexual sadism disorder diagnoses.  As we cannot say that this evidence had no impact on the jury's verdict, we

vacate the judgment, set aside the verdict, and remand this case to the Superior Court for a new trial.

Background.  The petitioner was convicted of sexual offenses on three occasions.  In 1977, he pleaded guilty to indecent exposure and threatening to commit a crime; the victims were his adult sister and her boyfriend.  He was sentenced to two months in the house of correction, suspended, with one year of probation.  In 1982, the petitioner grabbed a stranger's breast over her clothing in a public setting.  He was convicted of sexual assault, and committed to the house of correction for eight months followed by one year of probation upon release.  In 1991, the petitioner fondled a woman's breasts on a bus and kicked her father after the father confronted him.  A jury convicted him of indecent sexual assault and battery on the woman and assault and battery by means of a dangerous weapon on the woman's father, and he was sentenced to eighteen months in the house of correction and three years of probation.

Other sexual offense charges did not result in convictions. In 1978, the petitioner was charged with breaking and entering, assault with the intent to rape, and assault and battery related to an incident involving his girlfriend (1978 charges).  Those charges were dismissed.  In 2002, while traveling in Rhode Island, the petitioner allegedly forced a man to perform sexual acts on him, but the resulting sexual assault charge (2002

charge) was dismissed.  In 2003, the petitioner assaulted a woman with a knife.  Three years later, he pleaded guilty to assault by means of a dangerous weapon, carrying a dangerous weapon, and failure to register as a sex offender, and was sentenced to a term of from three to five years in State prison (2006 convictions); but the remaining charges against him -- rape, rape with force, unnatural rape, indecent assault and battery on a person over fourteen, kidnapping, and unnatural acts -- were dismissed (2003 charges).

In 2009, the petitioner was found to be a sexually dangerous person and committed to the Massachusetts Treatment Center pursuant to G. L. c. 123A, § 9.  In 2019, he petitioned the Superior Court for examination and discharge, claiming that he was no longer sexually dangerous.  In connection with his petition for discharge, he was examined by two qualified examiners, Dr. Katrina Colistra and Dr. Crystal Cookman.  See G. L. c. 123A, §§ 1, 9.  See Chapman, petitioner, 482 Mass. 293, 303-309 (2019) (discussing role of qualified examiners in discharge proceedings).  Both qualified examiners submitted reports to the court, as did Dr. Gregg Belle on behalf of the Community Access Board (CAB).[1]

---

[1] The CAB conducts annual reviews of and prepares reports on the current sexual dangerousness of civilly committed sexually dangerous persons.  See G. L. c. 123A, § 6A.  Its reports are admissible in petition for discharge proceedings.  See id. § 6A,

Prior to trial, the petitioner filed a series of motions in limine to exclude certain evidence at trial. One motion sought to exclude evidence of the dismissed 1978, 2002, and 2003 sexual offense charges. Another asked the judge to, among other things, exclude the opinions of the qualified examiners or, at least, conduct a voir dire "prior to any opinion being offered or allowed." In support of these motions, the petitioner asserted that "no information is available" regarding the 1978 charges, which were "dismissed for lack of prosecution, with consent of [the petitioner] and the complainant." The Commonwealth did not dispute that there was no available police report for the petitioner's 1978 charges. With respect to the 2002 charge, the petitioner attached a pleading from the Rhode Island Attorney General's Office stating that it had "reviewed this case and determined it is non-prosecutable for the following reason: Insufficient credible evidence. Complaining witness cannot be located." With respect to the dismissed 2003 charges, the petitioner attached a transcript of his plea colloquy for his 2006 convictions in which the prosecutor

---

§ 9. CAB witnesses are not independent experts, however, and their diagnoses cannot serve as the requisite clinical basis for a finding of sexual dangerousness. See Green, petitioner, 475 Mass. 624, 625, 629-630 (2016); Johnstone, petitioner, 453 Mass. 544, 551-552 (2009). See also Pierce, petitioner, 497 Mass. 140, 152 n.23 (2026).

explained that the Commonwealth was dismissing the charges because, "in preparation for trial and meeting with the complaining witness, evidence came out that would make several of those charges more difficult to prove."[2]

Following a motion hearing, the judge issued an omnibus pretrial order that denied the petitioner's motions in part and allowed them in part.  With respect to the dismissed charges against the petitioner, the judge allowed the admission of information about those charges ("the dates, types of charges, and dispositions") from court records, but precluded the admission of alleged facts from the 2002 and 2003 police reports (whether through direct evidence or set forth in the qualified examiners' reports).  The judge further ruled that, under the Supreme Judicial Court's decisions in Department of Youth Servs., 398 Mass. at 516, and Markvart, 437 Mass. at 331, the qualified examiners could consider and rely on those same alleged facts because, even though they were excluded from evidence, they "would be admissible through appropriate witnesses -- specifically, the two victims, each of whom provided the information to police directly -- and would also

_____

[2] In his motion, the petitioner noted that, because these statements by the prosecuting attorneys were not included in the criminal history records produced by the Commonwealth, it was unlikely that the qualified examiners were aware of them.

constitute information permissible for the qualified examiners to consider in formulating their opinions."  The judge did not address the Rhode Island Attorney General's Office's pleading on the 2002 charge or the prosecutor's statement regarding the dismissed 2003 charges.  Although the judge ruled that the petitioner was not entitled to a hearing to challenge the reliability of the qualified examiners' opinions under Commonwealth v. Lanigan, 419 Mass. 15, 26 (1994),[3] he did not address whether a voir dire or other hearing was required to determine the admissibility of the alleged facts on which the qualified examiners based their opinions.  See Markvart, 437 Mass. at 337-338 & n.5.

At trial, the reports of the two qualified examiners and the CAB member were admitted in evidence in redacted form.  All three authors testified as well, and all three opined that the petitioner suffers from mental abnormalities that make it likely that he will reoffend sexually, such that he remained a sexually dangerous person.  In particular, all three diagnosed the

---

[3] In Commonwealth v. Bradway, 62 Mass. App. Ct. 280, 283-290 (2004), we rejected a claim that the trial judge should have conducted a Daubert-Lanigan hearing prior to receiving the testimony of two qualified examiners.  See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589-595 (1993); Lanigan, 419 Mass. 15 at 24-26. The petitioner does not challenge this aspect of the judge's order on appeal.

petitioner with sexual sadism disorder.[4]  As defined by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013), sexual sadism disorder is characterized by "recurrent and intense sexual arousal from the physical or psychological suffering of another person, as manifested by fantasies, urges, or behaviors," where the individual "has acted on these sexual urges with a nonconsenting person, or the sexual urges or fantasies cause clinically significant distress or impairment."  In her report, Dr. Colistra based her conclusion that the petitioner meets the criteria of sexual sadism disorder primarily on the sexual offense allegations in the 2002 and 2003 police reports. Because those allegations were redacted in the version of her report admitted in evidence, only the petitioner's 1977 conviction for indecent exposure was set forth as support for her sexual sadism disorder diagnosis in that exhibit. Similarly, Dr. Cookman's diagnosis of sexual sadism disorder relied mainly on the allegations concerning the petitioner's

---

[4] Dr. Colistra also opined that the petitioner suffers from "a clinical personality disorder best characterized as Other Specified Personality Disorder with Antisocial Traits," but refrained from diagnosing him with the "full disorder" due to insufficient data of the conduct disorder in childhood. Dr. Cookman opined that the petitioner also meets the criteria for frotteuristic disorder and exhibitionistic disorder, relying on the allegations in the police reports as well as his previous convictions and behavior in confinement.

dismissed 2002 and 2003 charges; those alleged facts were, again, redacted in the version of her report admitted in evidence. Both qualified examiners opined that the petitioner's conduct was repetitive and compulsive, with Dr. Colistra asserting that the petitioner "continued to offend despite sanctions and . . . in places with a high risk of detection and with a notable degree of violence," and Dr. Cookman asserting that he "continued sexually offending" after his 1977 guilty plea, "with multiple additional legal interventions between offenses."

The petitioner introduced the report and testimony of his own expert, Dr. Eric Brown, who opined that the vast majority of the petitioner's criminal charges and convictions were nonsexual in nature, and that he "does not display a pattern of compulsive and uncontrollable sexual behavior." The petitioner also testified. The jury found that he remained a sexually dangerous person.

Discussion. Where the petitioner's appellate rights were preserved as to the issues at trial, we review to determine whether there was error, and, if so, whether the error was prejudicial. See Green, petitioner, 475 Mass. 624, 629 & n.13 (2016) (objection at motion in limine stage in sexually dangerous person trial preserves appellate rights on same issue at trial). An error is nonprejudicial only if we are convinced

that "the error did not influence the jury, or had but very slight effect" (citation omitted).  Commonwealth v. George, 477 Mass. 331, 341 (2017).

1.  Admissibility of records of the petitioner's dismissed sexual offense charges.  At the outset, we disagree with the petitioner's contention that the judge erred in admitting probation records that listed the petitioner's criminal charges and convictions, in addition to certified copies of his convictions.  The information in those records was also included in the qualified examiners' reports, which described the petitioner's sexual offense convictions and listed his "Criminal Charges Based on Available Records."

The judge correctly ruled that these records and information were admissible under G. L. c. 123A, § 14 (c).  "We have long recognized that the admissibility of the various records and reports in sexually dangerous person proceedings represents a very radical departure from ordinary evidentiary rules" (quotations and citation omitted).  McHoul, petitioner, 445 Mass. at 147.  Although such documents and information would ordinarily be excluded as inadmissible hearsay, the Legislature has identified "a variety of records and documents that 'shall be admissible,'" id., quoting G. L. c. 123A, § 14 (c), including "juvenile and adult court and probation records," McHoul, petitioner, supra, quoting G. L. c. 123A, § 9 ("Evidence of the

person's juvenile and adult court and probation records . . .

shall be admissible in a hearing under this section").

Accordingly, we have concluded that court records listing sexual

offenses and other criminal charges are admissible in sexually

dangerous person proceedings, even if those charges were

dismissed or nol prossed.  Commonwealth v. Mazzarino, 81 Mass.

App. Ct. 358, 368 (2012).  See Mackie, 100 Mass. App. Ct. at 89-

90 (admission of unredacted probation records, including

acquitted charges, was not error).[5]

2.  Admissibility of alleged facts from police reports

regarding the dismissed 2002 and 2003 charges.  At the same

time, the judge properly excluded from the jury's consideration

information in the police reports concerning the petitioner's

dismissed 2002 and 2003 sexual offense charges.  General Laws

---

[5] In its opposition to the petitioner's motion, the
Commonwealth contended that the number and type of criminal
charges in a person's history are "empirically related to risk
of re-offense" and taken into consideration by the Static-99R,
an actuarial measure of risk of future sex offense that both
qualified examiners used in their reports.  Our resolution of
this appeal does not require us to address whether the judge
erroneously allowed admission of the petitioner's Static-99R
risk labels and twenty-year rate of sexual recidivism.  In
addition, because we conclude infra that it was error to admit
the experts' sexual sadism disorder diagnoses on this record, we
do not address the petitioner's argument that the admission of
records listing his dismissed sexual offense charges unfairly
invited the jury "to infer facts" from those charges "that
supported the fundamental opinions of the Commonwealth's
experts."

c. 123A, § 14 (c), provides that "police reports relating to such person's prior sexual offenses . . . shall be admissible at the trial."  Where a petitioner has been convicted of a sexual offense, the police report for that offense is admissible.  Commonwealth v. Given, 441 Mass. 741, 744-746, cert. denied, 543 U.S. 948 (2004).  That includes "any statements describing the defendant's conduct and the circumstances attendant to the offense" in the report, even if that information did not result in additional criminal charges.  Given, 441 Mass. at 745.  See Mass. G. Evid. § 1103(b)(2) (2026).  On the other hand, "[b]ecause we presume innocence until guilt is proved beyond a reasonable doubt," reports relating to charges of sexual offenses that were dismissed, nol prossed, or of which the defendant was acquitted are merely "allegations" and are generally inadmissible.  Markvart, 437 Mass. at 336.  In some cases, we have approved the admission of evidence of sexual misconduct in police reports where the defendant pleaded to a nonsexual offense after being charged with a sexual offense and the sexual nature of the conduct was undisputed.  See, e.g., Commonwealth v. Torres, 87 Mass. App. Ct. 908, 909 (2015); Commonwealth v. Starkus, 69 Mass. App. Ct. 326, 333 (2007).[6]  The

---

[6] In Starkus, for example, the defendant had pleaded guilty to simple assault and battery, but the fact that he raped the victim was supported by both her statements and his admissions. Starkus, 69 Mass. App. Ct. at 329-333.  As we later explained in

judge distinguished those cases here, concluding that the
information in the police reports concerning the petitioner's
alleged sexual misconduct in 2002 and 2003 was inadmissible
because the 2002 charge was dismissed and, as to the dismissed
2003 charges, it was "never proved, admitted, or otherwise
established" that the nonsexual offenses to which the petitioner
pleaded guilty were sexual in nature.  See Mackie, 100 Mass.
App. Ct. at 88.

The judge also prohibited the information in the police
reports from being admitted through the experts' testimony or
reports.  Even though, as discussed in section 3, infra, the
judge ruled that the qualified examiners were permitted "to

---

Mackie, "the totality of the circumstances in Starkus
established the sexual nature of the assault and battery, and,
accordingly, the assault and battery qualified as a 'sexual
offense' within the meaning of the [sexually dangerous person]
statute."  Mackie, 100 Mass. App. Ct. at 87.  See G. L. c. 123A,
§ 1 (defining "sexual offense" to include both enumerated
offenses and "any other offense, the facts of which, under the
totality of the circumstances, manifest a sexual motivation or
pattern of conduct or series of acts of sexually-motivated
offenses").  We also determined in Starkus that statements in a
police report by other victims of uncharged sexual misconduct by
the petitioner were admissible because they showed "a pattern of
conduct and the probable existence of the same passion or
emotion at the time in issue."  Starkus, supra at 332-333.
Consistent with these rulings, hearsay is admissible in sexually
dangerous person proceedings "if it concerns uncharged conduct
of the person and is closely related in time and circumstance to
a sexual offense for which the person was convicted or
adjudicated a juvenile delinquent or youthful offender."  Mass.
G. Evid. § 1103(b)(2) (2026).

consider and rely upon information" from the police reports for the 2002 and 2003 offenses "as part of the factual bases for their opinions," he correctly recognized that, under Markvart, they could not "articulate that basis during their direct examinations."  The Supreme Judicial Court explained in that case that, "[w]hile allowing an expert to base an opinion on facts or data that, although admissible, have not actually been admitted in evidence, we have not allowed the expert to articulate that factual basis as part of the expert's direct examination" (citation omitted).  Markvart, 437 Mass. at 338. In addition, although a qualified examiner's report is presumptively admissible under G. L. c. 123A, § 14 (c), see Commonwealth v. Baxter, 94 Mass. App. Ct. 587, 590 (2018), such a report, like the expert's direct examination, cannot be transformed into "a vehicle for the introduction of facts in evidence (other than those that the expert directly observed)," but rather must be redacted "prior to its submission to the jury to exclude any facts or data that were not presented in evidence or elicited during the cross-examination of the qualified examiner."  Markvart, supra at 338-339.  See Mazzarino, 81 Mass. App. Ct. at 369.  Accordingly, the reports of the qualified examiners admitted during trial were redacted to exclude details regarding the petitioner's dismissed sexual offense charges.

The parties do not take issue with this part of the judge's ruling.[7]

3. The qualified examiners' reliance on the facts alleged in the 2002 and 2003 police reports as bases for their diagnoses and opinions regarding the petitioner's risk to reoffend. We turn to whether the qualified examiners could rely on the excluded information in the police reports concerning the petitioner's alleged but unproven sexual misconduct in forming their opinions that he suffers from sexual sadism disorder and is likely to reoffend and, thus, should remain committed as a sexually dangerous person. The petitioner contends that the judge erred by failing to exclude the opinions of the qualified examiners or, in the alternative, grant his request for a voir dire "to determine whether there would, at the time of trial,

---

[7] The judge scrupulously enforced his ruling at trial. At one point, Dr. Cookman testified with respect to the petitioner's dismissed 2003 charges that, "even though he wasn't convicted of a sexual offense . . . you have to look at the nature of what was accused." After the petitioner objected, the judge struck Dr. Cookman's answer and instructed the jury to disregard it. At sidebar, the judge instructed the Commonwealth to "keep tighter, tighter, control over [Dr. Cookman], particularly if you're getting anywhere near the [2002] or [2003] charges." "Only a compelling showing of ineradicable prejudice would cause us to conclude that the judge's instructions to disregard [a witness's] testimony were inadequate," Commonwealth v. Thad T., 59 Mass. App. Ct. 497, 508 (2003), and we are satisfied that this exchange did not "put before the jury" facts not properly in evidence, Markvart, 437 Mass. at 338.

still be a way that the facts set forth in the [police reports] could be admitted in evidence."  Markvart, 437 Mass. at 337 n.5.[8] We agree.

a.  Admissibility requirements for information on which qualified examiners may rely.  Like the rules governing what information qualified examiners may disclose in their testimony and admitted reports, the rules that govern what information they may rely on as bases for their opinions are complex.

It is well established that a qualified examiner may receive information about the facts underlying a petitioner's dismissed sexual offense charges.  General Laws c. 123A, § 13 (b), provides that qualified examiners shall be supplied with, amongst other records and reports, "copies of any juvenile and adult court records," "police reports for each sexual offense conviction or adjudication," and "such other information as may be pertinent or helpful to the examiners in making the diagnosis and recommendation."  This provision does not specifically authorize the provision of police reports related to charges that did not result in convictions.  Markvart, 437

---

[8] Although we focus on the petitioner's motion to exclude or conduct a voir dire with respect to the opinions of the qualified examiners, we note that the same infirmity discussed herein applies to the report and testimony of Dr. Belle who, on behalf of the CAB, opined that the petitioner meets the criteria for sexual sadism disorder.

Mass. at 334.  But because it does not expressly prohibit the provision of such materials either, the court in Markvart concluded that "such materials may be provided to qualified examiners."  Id.  Here, the unredacted reports from the qualified examiners and CAB witness show that each expert was provided with police reports detailing the alleged facts underlying the dismissed sexual offense charges.

A different question is whether the experts may rely on such information in forming their opinions.  In Markvart, the court concluded that qualified examiners may base their opinions on three things:

> "(1) facts personally observed; (2) evidence already in the records or which the parties represent will be admitted during the course of the proceedings, assumed to be true in questions put to the expert witnesses; and (3) 'facts or data not in evidence if the facts or data are independently admissible and are a permissible basis for an expert to consider in formulating an opinion.'"

Markvart, 437 Mass. at 337, quoting Department of Youth Servs., 398 Mass. at 531.  Here, only the third prong of this test is at issue.[9]

---

[9] As for the first prong, the qualified examiners and CAB witness had no personal knowledge of the alleged facts underlying the petitioner's dismissed sexual offense charges. As for the second prong, as discussed, the judge properly excluded the police reports and allegations set forth therein from evidence.  At trial, the Commonwealth could have called an "appropriate witness[]" to prove the alleged facts in the police reports.  Markvart, 437 Mass. at 337.  Cf. Commonwealth v. Bradshaw, 94 Mass. App. Ct. 477, 481 (2018) ("[T]he limitation placed on the admissibility of witness statements and police

The independent admissibility requirement for basis
evidence -- that is, the "admissible but not admitted facts and
data" on which an expert's opinion relies, Commonwealth v.
Gordon, 496 Mass. 554, 581 (2025) -- reflects Massachusetts's
relatively restrictive approach to expert opinion evidence.  See
M.S. Brodin, M. Avery, & B.K. Golden, Massachusetts Evidence
§ 7.5.3, at 535-538 (2026 ed.).  In Department of Youth Servs.,
the Supreme Judicial Court discussed the "settled and
traditional rule in Massachusetts," 398 Mass. at 527, that an
expert witness "may base his opinion upon facts observed by
himself or within his own knowledge and testified to by himself
or upon facts assumed in the questions put to him and supported
either by admitted facts or by the testimony of other witnesses
already given or to be given at the trial, or upon facts derived
partly from one source and partly from the other," id., quoting
Commonwealth v. Russ, 232 Mass. 58, 73 (1919).  The court
declined to adopt the then-Proposed Mass. R. Evid. 703, which
would have "enlarg[ed] the basis for expert opinion" by allowing

---

reports by the court in Markvart does not limit a witness's
ability to testify about uncharged sexual misconduct during a
trial on a sexually dangerous person petition").  But just as
the prosecutors declined to advance the dismissed 2002 and 2003
charges at the time, the Commonwealth did not call the
complainants for the 2002 and 2003 charges as witnesses or
present any other evidence in support of those allegations in
this case.

expert opinions based on inadmissible evidence of a type reasonably relied on by experts in the relevant field, as Federal Rule of Evidence 703 allows.  Department of Youth Servs., supra at 527-528.  See Fed. R. Evid. 703 (2011) (Federal Rule 703) ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted").  The court noted concerns that Federal Rule 703 had created a "serious potential for abuse" by, among other things, allowing an expert to "base his (or her) opinion testimony on inadmissible data conveyed to the witness outside the courtroom" (citations omitted).  Department of Youth Servs., supra at 530-531.  Yet, even though the court declined to "accept the principles of the proposed rule," it took "a modest step" in that direction "by permitting an expert to base an opinion on facts or data not in evidence if the facts or data are independently admissible and are a permissible basis for an expert to consider in formulating an opinion."  Id. at 531. That standard governs expert opinion evidence today.  See Mass. G. Evid. § 703 (2026).

b.  The independent admissibility of the alleged facts underlying the dismissed 2002 and 2003 charges.  Applying the third prong of the Markvart test to this case, the key question is whether the facts alleged in the 2002 and 2003 police reports

were independently admissible.  Markvart, 437 Mass. at 337;
Department of Youth Servs., 398 Mass. at 531.  The judge ruled
that the qualified examiners could rely on those alleged facts
because they "would be admissible through appropriate witnesses
-- specifically, the two victims, each of whom provided the
information to police directly."[10]  We recognize that trial
judges have broad discretion to admit or exclude expert
evidence, Commonwealth v. Waite, 422 Mass. 792, 804 (1996), and
that discretion extends to how the admissibility of contested
basis evidence is determined.  Nevertheless, we conclude that
the judge abused his discretion by admitting the qualified
examiners' reports and testimony without first determining, at a
voir dire, the independent admissibility of the basis evidence
on which they relied.  See, e.g., Commonwealth v. Wardsworth,
482 Mass. 454, 467 (2019); Commonwealth v. Roman, 414 Mass. 235,
237-238 (1993).

---

[10] The judge reiterated this reasoning at trial, stating
that the qualified examiners and CAB witness were

> "allowed to rely on information from a police report even
> if it didn't result in a conviction, if that information
> could have been with an appropriate witness admissible, and
> because . . . the police reports make pretty clear that
> what they received were direct victim accounts of what had
> happened, that would be admissible at trial through an
> appropriate witness.  The victim, right."

The qualified examiners' reliance on the dismissed 2002 and 2003 sexual offense charges was evident from their unredacted reports. At trial, counsel for the Commonwealth acknowledged that "all three experts have diagnosed [the petitioner] with sexual sadism[,] which is almost entirely, if not entirely based, . . . on the [2002] and the 2003 offense[s]." Pointing to the 2002 pleading from the Rhode Island Attorney General's Office and the plea hearing transcript from his 2006 convictions, both of which cast doubt on whether the alleged victims could or would be willing to testify under oath to their statements set forth in the police reports underlying the dismissed 2002 and 2003 charges, the petitioner requested in his motion in limine either the exclusion of the qualified examiners' reports and testimony, or a voir dire. See Markvart, 437 Mass. at 337 n.5.

As the proponent of this evidence, the Commonwealth was required to establish that the expert opinions satisfied the requirements of Markvart and Department of Youth Servs. See Wardsworth, 482 Mass. at 466-470; Waite, 422 Mass. at 803; Roman, 414 Mass. at 237-239. In opposing the petitioner's motion, however, the Commonwealth did not make any showing that "the underlying 'facts or data' contained in [the police reports] would potentially be admissible through appropriate witnesses (e.g., the complaining witness, or the officer who

took the defendant's statement)." Markvart, 437 Mass. at 337,
citing Department of Youth Servs., 398 Mass. at 531. In
particular, the Commonwealth did not suggest that the
complaining witnesses could or would testify under oath to their
statements set forth in the police reports. Nor did it point to
any other evidence that supported the dismissed 2002 and 2003
charges or otherwise rebutted the prosecutors' contemporaneous
statements that they could not be proven. The Commonwealth did
argue that the judge should admit in evidence certain
"admissions" made by the petitioner regarding the dismissed 2002
and 2003 charges, but in none of those statements did the
petitioner admit to having engaged in a sexual assault or other
nonconsensual sexual conduct.[11]

Instead of showing why the alleged facts were independently
admissible, the Commonwealth contended that it was "up to [the
petitioner] to highlight any deficiencies in the [qualified
examiners'] testimony and reports through cross-examination."
Cross-examination, however, was not a solution to this problem.
As discussed, the factual information about the dismissed 2002
and 2003 charges was excluded from evidence at trial, at least
through the admitted qualified examiners' reports and testimony

---

[11] Nearly all of the petitioner's statements regarding the
dismissed 2002 and 2003 charges were ultimately redacted in the
expert reports admitted at trial.

on direct examination.  See Markvart, supra at 338.  Cross-examination that addressed the reliability of these allegations would have exposed the jury to the excluded information and opened the door to further discussion of the information on redirect.  See Matter of P.R., 488 Mass. 136, 143 (2021); Commonwealth v. Piantedosi, 478 Mass. 536, 543-544 (2017).  Indeed, the judge twice indicated that the qualified examiners could testify about the dismissed 2002 and 2003 charges on redirect if the petitioner raised them during cross-examination.  See Markvart, supra at 338-339.

We recognize that, under Markvart, "there is nothing about the fact that the earlier case" was dismissed or nol prossed that "would automatically preclude the qualified examiner from relying on those materials consistent with the principles articulated" in Department of Youth Servs.  Markvart, 437 Mass. at 338.  At the same time, we reject any suggestion that hearsay statements in a police report are always "independently admissible" under Markvart, simply because they reflect what a complainant or other witness told the police at the time about the alleged offense.  Were that the case, there would never be any limitation on qualified examiners' reliance on alleged facts in police reports for dismissed sexual offense charges -- a premise that the court in Markvart implicitly rejected when it concluded that it could not "make any determination as to the

propriety of an expert's reliance on those materials in [that] particular case" based on the record before it.  Id. at 337-338. The court further specified that a qualified examiner's reliance on police reports and witness statements must be "consistent with the requirements and limitations" of Department of Youth Servs., Markvart, supra at 339, and noted that "a voir dire may be required to determine whether there would, at the time of trial, still be a way that the facts set forth in the documents could be admitted in evidence."  Id. at 337 n.5, citing Department of Youth Servs., 398 Mass. at 532.  In the absence of such a threshold determination here, there was an inadequate basis for the judge to conclude that the alleged facts were independently admissible, and the admission of the expert evidence that relied on them was therefore error under Department of Youth Servs. and Markvart.[12]

c.  Prejudice.  Having concluded there was error, we have no doubt that the error was prejudicial because it allowed the qualified examiners (as well as the CAB member) to form their opinions and then testify that the petitioner suffers from

---

[12] That the reports and testimony of qualified examiners need not generally satisfy the standards for the reliability of expert evidence under Lanigan, 419 Mass. at 25-26, citing Daubert, 509 U.S. at 589-595, only reinforces the importance of ensuring that other evidentiary requirements, like those under Department of Youth Servs. and Markvart, are met.  See Bradway, 62 Mass. App. Ct. at 283-290.

sexual sadism disorder -- at a trial to decide whether he remains a sexually dangerous person. To find that the petitioner remained a sexually dangerous person, the jury had to determine that he "[(1)] has been convicted of a sexual offense, [(2)] suffers from a mental abnormality or personality disorder that renders him a menace to the health and safety of others, and [(3)] is likely to engage in sexual offenses if not confined." Commonwealth v. Fay, 467 Mass. 574, 580, cert. denied, 574 U.S. 858 (2014), citing G. L. c. 123A, §§ 1, 14. We are not persuaded by the Commonwealth's argument that, "[e]ven if admission of the diagnosis of a sexual sadism disorder was error," the petitioner cannot show prejudice because he was also "diagnosed with other specified personality disorder with antisocial, narcissistic, and paranoid traits." Where the issue is sexual dangerousness, there is a world of difference between having a personality disorder and being diagnosed as a sexual sadist. A jury could quite reasonably conclude that only the latter, not the former, justifies a person's continued civil commitment.

Furthermore, in the absence of the sexual sadism disorder diagnosis, the jury would have been left with inconsistent reports by the qualified examiners, with one opining that the petitioner's decades-old convictions and institutional misbehavior partially support diagnoses of frotteuristic

disorder and exhibitionistic disorder, and the other declining to diagnose the petitioner with a "full . . . clinical personality disorder" and characterizing her diagnosis as "Other Specified Personality Disorder with Antisocial Traits."

Lastly, their mental health diagnoses aside, both qualified examiners relied on the timing of the dismissed 2002 and 2003 charges to support their opinions that the petitioner is likely to engage in future sexual offenses.  For example, in her report, Dr. Colista cited the petitioner's 2006 convictions for a nonsexual offense (with the phrase "with underlying sexual offending details" redacted) as support for her (unredacted) conclusion that he "continued to offend despite sanctions and . . . in places with a high risk of detection and with a notable degree of violence."  For her part, Dr. Cookman, in her report, asserted that the petitioner "continued sexually offending" after his 1977 guilty plea, "with multiple additional legal interventions between offenses" -- an assertion that is difficult to square with the fact that the petitioner was last convicted of a sexual offense in 1991, unless the alleged facts underlying the dismissed 2002 and 2003 charges are considered. Viewing the evidence as a whole, we cannot say that the qualified examiners' reliance on the alleged facts concerning the dismissed 2002 and 2003 sexual offense charges "did not

influence the jury, or had but very slight effect" (citation omitted).  Mackie, 100 Mass. App. Ct. at 88.[13]

Conclusion.  For the reasons detailed above, we vacate the judgment, set aside the verdict, and remand this case for a new trial.

So ordered.

---

[13] Because we conclude that the admission of the expert opinions was prejudicial error under Department of Youth Servs., 398 Mass. at 531, and Markvart, 437 Mass. at 339, to the extent they relied on the alleged facts regarding the petitioner's dismissed 2002 and 2003 charges, we do not address his argument that it also violated his rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.  See SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 330 (2017) ("it is canonical that courts should, where possible, avoid unnecessary constitutional decisions").  We note that in Markvart, the Supreme Judicial Court stated that the "requirements and limitations" imposed by the evidentiary rule in Department of Youth Servs. "suffice to address due process concerns and the right of confrontation."  Markvart, supra at 339.  See Mackie, 100 Mass. App. Ct. at 85 n.9.  The court, however, has since modified that view.  See Gordon, 496 Mass. at 581 (holding that evidentiary rule "does not pass constitutional muster" under confrontation clause of Sixth Amendment to United States Constitution "where an expert testifies to an opinion that depends on the truth of the testimonial hearsay of a nontestifying analyst").